IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FINDABILITY SCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOFT10, INC., <br><br> Defendant. | C.A. No. 20-cv-12236 |

## AMENDED COMPLAINT

### PARTIES

1.      Findability Sciences, Inc. ("Findability Sciences") is a Delaware corporation with a principal place of business at 470 Atlantic Ave., Ste 400, Boston, Massachusetts.

2.      On information and belief, Soft10, Inc. ("Soft10") is a Delaware corporation with a principal place of business at 186 Alewife Brook Parkway, Suite 200, Cambridge, Massachusetts.

### JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. §§ 2201–2202 because the threatened actions by Soft10 create an actual controversy concerning copyright infringement. The Court has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because Counts II through V form part of the same case or controversy as Count I.

4.      This Court has personal jurisdiction over Soft10 because Soft10 has maintained a principal place of business in this District. Moreover, Soft10 contractually consented to jurisdiction in this Court.

1

5. Venue is proper pursuant to 28 U.S.C. § 1400(a) because Soft10 has maintained a principal place of business in this District.

**FACTS**

*Background*

6. Founded in 2010, Findability Sciences applies the power of big data, cognitive computing, and artificial intelligence to develop and implement, among other things, prediction and forecasting solutions for its customers throughout the world.

7. Findability Sciences' hallmark product is its award-winning Findability Platform®. The Findability Platform® has three modules which can be used alone or in various combinations: FP-Bigdata, FP-Cognition, and FP-Predict+.

8. Founded in 2012, Soft10 developed and owns predictive modeling software commonly advertised under the name "Dr. Mo." Dr. Mo is a classification technology, i.e., it makes predictions based on categorical class labels.

9. For example, based on a data set (e.g., credit history, salary, age), Dr. Mo can predict whether a financial institution should provide credit to an individual customer (e.g., credit approval – Y/N).

10. On or about December 28, 2015, Findability Sciences and Soft10 entered into an Alliance Agreement (the "Alliance Agreement"). Under the Alliance Agreement, Findability Sciences agreed to promote, recommend, and sell Soft10's Dr. Mo software solution either integrated with Findability Sciences' products or on a stand-alone basis.

11. During 2015 and 2016 Findability Sciences also acquired an interest in Soft10. It purchased shares in three tranches, totaling a $150,000 investment.

12. From 2015 through 2017 Findability Sciences had limited success in selling Dr. Mo. Critically, the Dr. Mo technology is not an inherent or necessary part of the Findability Platform® or any of Findability Sciences modules, including FP-Predict+. As a result, a sale by Findability Sciences does not correspond to a sale or license of Dr. Mo. And, despite Findability Sciences' marketing efforts, there existed very few customers who were interested in Dr. Mo either as part of the Findability Platform® or as a separate classification technology.

13. Upon information and belief, Soft10 also struggled to monetize Dr. Mo independently.

*The Stock Purchase Agreement, Stockholders Agreement & Escrow Agreement*

14. In or about 2017, Soft10's initial investor exited Soft10 by selling back its 930 shares in the company. A portfolio company of this first investor was also a purchaser of the Dr. Mo technology, but realized that the technology was no longer of use and stopped licensing it.

15. Accordingly, Findability Sciences purchased a substantial interest in Soft10 pursuant to the terms of the Stock Purchase Agreement dated July 24, 2017 (the "Stock Purchase Agreement"). Part of the proceeds from this purchase were used by Soft10 to redeem the shares from its initial investor.

16. After Findability Sciences' July 2017 purchase of shares in Soft10, Findability Sciences owned 1,361 shares of Soft10's common stock or an approximate thirty-one percent ownership interest in Soft10. The remainder of the shares were, and remain, owned by Soft10's two founders, Dr. Milorad Krneta and Ms. Johanne Larouche.

17. At the time it acquired its interest in Soft10, Findability Sciences had doubts about Soft10's viability. These doubts led Findability Sciences to insist on certain terms within the Stock

Purchase Agreement to protect its investment, including that the Dr. Mo technology and its associated source code be placed into escrow.

18. Accordingly, as contemplated in the Stock Purchase Agreement, the parties executed a Source Code Escrow Agreement dated July 26, 2017 (the "Escrow Agreement").

19. Under the Escrow Agreement, Soft10 placed in escrow Dr. Mo, including the "[s]ource code for [Dr. Mo] along with all objects, files, libraries, documentations . . . [and] everything that is needed to compile and run a fully functional Dr. Mo Software."

20. If Soft10 becomes insolvent, admits its inability to pay its debts generally as they become due, or ceases to carry on its business without a successor, the Dr. Mo technology shall be released to Findability Sciences as beneficiary of the Escrow Agreement. Upon that release, Soft10 assigns to Findability Sciences all right, title, and interest in the Dr. Mo technology and Findability Sciences shall have full ownership rights in the software.

21. The Escrow Agreement requires Soft10 to pay to the escrow agent an annual fee (totaling $1,095) at the beginning of each contract year.

22. Further, as contemplated in the Stock Purchase Agreement, Findability Sciences, Soft10, Milorad Krneta, and Johanne Larouche entered into the Stockholders Agreement dated July 27, 2017 (the "Stockholders Agreement"), which set out rights and obligations of the parties to the Stockholders Agreement and provided certain Protective Provisions for the benefit of Findability Sciences.

*The ASL Software Agreement*

23. At or about the same time that the Stock Purchase Agreement and Escrow Agreement were executed, the parties also executed (i) an Amended and Restated Alliance

Agreement ("Amended Alliance Agreement") dated July 27, 2017 and (ii) a Corporate Partnering Software Development License Agreement dated July 27, 2017 (the "License Agreement").

24. These agreements reaffirmed the parties' commitments to work together to promote and sell Dr. Mo. It also granted Findability Sciences a higher level of access to and knowledge about Dr. Mo.

25. Findability Sciences believed that this access and knowledge would enable Findability Sciences to better integrate Dr. Mo into its Findability Platform® and result in a greater chance of commercial success for the technology.

26. Unfortunately, Soft10 never cooperated in granting Findability Sciences the contemplated access and knowledge, citing intellectual property reasons and demanding that Findability Sciences make further payments to Soft10 for more information.

27. Nevertheless, Findability Sciences aggressively promoted the Dr. Mo technology and secured pilot projects to prove the concept to approximately twelve customers. Findability Sciences paid Soft10 for each of these projects per the terms of the parties' agreements. It also made several advance payments on requests from Soft10 in an effort to assist Soft10 with its financial situation.

28. In the end, however, Findability Sciences has had very limited success in converting those Dr. Mo. proof of concept projects into ongoing projects or otherwise selling Dr. Mo.

29. In apparent frustration with the lack expected income from sales of Dr. Mo through Findability Sciences, Dr. Milorad Krneta, a founder and the Chief Executive Officer of Soft10, sent a letter to Mr. Daichi Nozaki of SoftBank—an investor in Findability Sciences and a joint venture partner in Japan—on July 19, 2018. In that letter, Soft10 blamed Findability Sciences for

the financial trouble Soft10 found itself in and accused Findability Sciences of breaching its agreements with Soft10 and engaging in unfair business practices.

30. Upon learning of this communication to SoftBank, Findability Sciences contacted Dr. Krneta. Findability Sciences made clear that Dr. Krneta's communication contained false statements and violated numerous agreements between the parties, including, without limitation, the Stockholders Agreement.

31. A few weeks later, on August 10, 2018, Dr. Krneta again reached out to SoftBank. This time Dr. Krneta admitted that his prior allegations against Findability Sciences "were based on my imagination and without having all the details and understanding of how global business is conducted." He further conceded that his claims were "unfounded and unwarranted."

32. In fact, Soft10 undertook an audit of Findability Sciences' documentation on August 2, 2018 and Johanne Larouche, President of Soft10, agreed that there was no use of the Dr. Mo technology outside of the terms of the parties' agreements.

33. In order to remove any ambiguities regarding revenue sharing between the parties, at or about this time, the parties mutually agreed to and executed a new agreement. The Amended License Agreement and the License Agreement were superseded by the Application Specific License Software Agreement entered into on or about August 20, 2018 (the "ASL Software Agreement"). Pursuant to the terms of the ASL Software Agreement, Soft10 agreed to license the Dr. Mo technology to Findability Sciences for a flat monthly fee.

34. The ASL Software agreement also provides the following with respect to Dr. Mo (referred to as the "Program"): "S10 hereby grants to FS and its Affiliates for no cost one perpetual, irrevocable, worldwide, non-exclusive, non-transferable, and royalty-free license to the Program to reproduce, use, modify and otherwise prepare the Solution for the purposes of using the Program

to develop integration or interfaces between the Program and the Solution (and any necessary resulting modifications to the Value-Add Components or the Solution) and to otherwise develop, test and evaluate the Solution and any other combined product." Findability Sciences uses this perpetual, irrevocable, worldwide, non-exclusive, non-transferable, and royalty-free license for a single instance of the Findability Platform® that has been integrated with Dr. Mo for demonstration purposes.

35. In addition, Findability Sciences agreed to prepay certain licensing fees after Soft10 sought prepayment because of alleged financial distress and its founder's health and age. Under the parties' letter agreement dated August 17, 2018 (the "Prepayment Agreement"), Findability Sciences had the right to demand repayment in full of the remaining outstanding prepaid services balance, along with all accrued but unpaid interest. And Soft10 was obligated to repay this amount within seven days of such demand.

*Lack of Market for Dr. Mo & Termination of ASL Software Agreement*

36. Following the execution of the ASL Software Agreement, Findability Sciences continued to struggle to sell Soft10's Dr. Mo technology either as part of its FP-Predict+ platform or otherwise.

37. Soft10 has always been aware of Dr. Mo's limited success because, among other things, Findability Sciences is required to obtain from Soft10 a license key for each use.

38. The last time Findability Sciences licensed its FP-Predict+ platform with the Dr. Mo technology was in or about November 2018. But after having used FP-Predict+ for approximately seven months, this customer decided that it did not need all of the components of the platform, including the Dr. Mo classification technology. Accordingly, Dr. Mo was removed from the platform as of June 2019.

39. The vast majority of Findability Sciences' business is providing data science services to its customers. After the last purchase order for Dr. Mo, which was dated May 27, 2019, none of the service agreements entered into between Findability Sciences and its customers has required utilization of the Dr. Mo classification technology. Rather, Findability Sciences has employed its own technologies in connection with these engagements, including, among other things, data management, data mining, data unification, natural language classification, cognition, supervised and unsupervised machine algorithms, and computer vision.

40. At the same time, Soft10 continued its threatening and harassing behavior, such as by sending improper communications to Findability Sciences board.

41. Accordingly, Findability Sciences decided to stop offering Dr. Mo. for sale. And on October 20, 2019, Findability Sciences provided notice of its intention to terminate the ASL Software Agreement, effective only after Soft10 repaid Findability Sciences $60,367 due at that time under the Prepayment Agreement.

42. To date, Soft10 has failed to remit to Findability Sciences this refund amount. With accrued interest, the outstanding amount as of August 30, 2021 is $74,395.

*Soft10 Ceases to Be a Going Concern*

43. In addition, on information and belief, Soft10 has ceased conducting business.

44. The board of directors of Soft10 is comprised of Dr. Krneta, Ms. Larouche. and Mr. Anand Mahurkar, the founder and Chairman of Findability Sciences.

45. Pursuant to the Stockholders Agreement, Soft10's board of directors are to meet no less than once every calendar quarter. But no formal board of directors' meeting has taken place since April 2019 despite multiple requests by Mr. Mahurkar.

46. Further, pursuant to the Stockholders Agreement, Soft10 is required to provide certain financial reports to Findability Sciences on a regular basis. But Soft10 has not provided timely financial reports since at least April 2018.

47. In a November 5, 2019 call between Dr. Krneta and Mr. Mahurkar, Dr. Krneta refused to provide any details on Soft10's current operation or his whereabouts and again made baseless accusations of Findability Sciences using Dr. Mo. in an unauthorized or unlicensed manner.

48. Moreover, according to the records on file with the Secretary of the Commonwealth of Massachusetts, Soft10 did not file an annual report for 2017 or 2018 and, on June 28, 2019, Soft10's authority to transact business in the Commonwealth was involuntarily revoked.

49. And the Secretary of the State of Delaware declared Soft10 inoperative and void as of March 1, 2020.

50. Soft10 has also refused to provide information to Findability Sciences, as shareholder, regarding the operations of Soft10, including, the status of operations of Soft10 in the United States and the balance of accounts held in the name of Soft10 since 2018.

51. On information and belief, Soft10 ceased carrying on its business related to Dr. Mo in or about 2019 and is only currently operating for purposes of this lawsuit.

52. On information and belief, agents of Soft10 acting on its instructions have sought to solicit information from Findability Sciences under false pretenses.

53. On information and belief, Dr. Krneta and Ms. Larouche—the founders and only employees of Soft10—left the United States in or about April 2019. In addition, Dr. Krneta and Ms. Larouche have not transacted any business on behalf of Soft10 since that time.

54. Among other things, in January 2020, Soft10 failed to pay the annual fee to the escrow agent under the Escrow Agreement. Findability Sciences and the escrow agent made several attempts to have Soft10 pay the annual fee, but Soft10 refused. As of December 1, 2020, Soft10 owed $3,000.50 to the escrow agent.

*Soft10 Renews Its Knowingly False Assertions*

55. On or about December 27, 2019, Soft10—through its outside counsel—wrote to Findability Sciences asserting that Findability Sciences was selling Dr. Mo as part of its Findability Platform and outside the terms of the ASL Software Agreement. Soft10 further demanded "a full audit of ALL revenues FS has received, directly or through all subsidiaries, affiliates or partners, from the sale, licensing or provision of services using its Findability Platform since January 1, 2016." And Soft10 indicated it was prepared to assert a host of claims against Findability.

56. Soft10 has also accused Findability Sciences as the party responsible for its inability to carry on its business. In particular, Soft10 has alleged that Findability Sciences breaches of the ASL Software Agreement caused it financial harm such that it is no longer able to carry on its business.

57. Counsel for Findability Sciences responded to these false assertions and demand on or about January 29, 2020. Findability Sciences assured Soft10 that it was not using Dr. Mo outside the parties' agreements and offered to allow Soft10 to audit Findability Sciences server log to review its use of the technology. This audit right was specifically contemplated in the Prepayment Letter Agreement and was the mechanism the parties agreed to in order to resolve on any dispute regarding Findability Sciences' use of Dr. Mo.

58. After initially agreeing in principle to the contractually-provided-for server audit, Soft10 abruptly changed course in late August 2020. Soft10 refused to audit Findability Sciences'

server logs. It claimed it had evidence showing "with complete certainty" that FP-Predict+ "is nothing more than an embedded version of Soft10's Dr. Mo." Soft10 again asserted this alleged use of the Dr. Mo software by Findability entitled Soft10 to a host of remedies, "all of which Soft10 is willing to pursue."

59. On September 17, 2020, Soft10 sought instead an inspection of "full audited financial statements and all detailed accounting for all revenue it derived from the sale of FP-Predict+ (including services) from January 1, 2017 through present."

60. Soft10 grounded its expansive demand for documentation related to the FP-Predict+ software in its baseless claim that Dr. Mo is embedded in the instances of the "FP Predict platform" from which Findability Sciences derives revenue or that it otherwise unlawfully uses the Dr. Mo technology. Soft10 further asserted that "it is entitled to compensation tied to all sales and services performed with the [FP-Predict+] platform."

61. Soft10 made this demand despite the express language in the ASL Software Agreement that provides that "FS has no obligation, whatsoever, to disclose names of Customer or details of their contractual arrangements with FS for the use of the Solution" to Soft10.

62. Moreover, Soft10 threatened to communicate its allegations to SoftBank as well as numerous other customers of Findability Sciences should Findability Sciences refuse to immediately cease and desist all sales of its FP-Predict+ module.

## COUNT I
### (Declaratory Judgment - Non-Infringement of Copyright)

63. Findability Sciences reavers and incorporates by reference paragraphs 1–62 above.

64. Soft10 claims it owns the Dr. Mo software.

65. Soft10 has accused Findability of having used the Dr. Mo software in an unauthorized or unlicensed manner, including asserting that Findability Sciences used the Dr. Mo

11

software after Findability Sciences provided notice of its intention to terminate the ASL Software Agreement.

66. The Copyright Act governs the unlicensed use of software.

67. Soft10 has accused Findability Sciences of embedding the Dr. Mo software into Findability Sciences' FP-Predict+ software in an unauthorized or unlicensed manner, including asserting that Findability Sciences embedded the Dr. Mo software in an unauthorized or unlicensed manner.

68. The Copyright Act governs derivative works in software.

69. Soft10 has repeatedly threatened to sue Findability Sciences to seek damages for the alleged unauthorized or unlicensed use of the Dr. Mo software, and Soft10 has demanded that Findability Sciences and its customers cease and desist selling and using Findability Sciences' FP-Predict+ software.

70. Findability Sciences denies it has used the Dr. Mo software or embedded the Dr. Mo software in its FP-Predict+ software in an unauthorized or unlicensed manner.

71. Accordingly, an actual controversy between Findability Sciences and Soft10 exists under 28 U.S.C. §§ 2201–2202 as to whether Findability Sciences infringed a Soft10 copyright in the Dr. Mo software.

72. A declaratory judgment as to copyright infringement will clarify and settle legal relations at issue between the parties, and it will afford Findability Sciences relief from the uncertainty, insecurity, and controversy of Soft10's threats to sue Findability Sciences and interfere with Findability Sciences' business.

## COUNT II
### (Declaratory Judgment – No Breach of the ASL Software Agreement by Findability Sciences)

73. Findability Sciences reavers and incorporates by reference paragraphs 1–72 above.

74. An actual case or controversy exists between the parties as to whether Findability Sciences breached the terms of the ASL Software Agreement by selling, using, or licensing Dr. Mo without remunerating Soft10.

75. Findability Sciences has neither sold nor licensed Dr. Mo either in connection with the Findability Platform® or as a stand-alone product without payment of the license fee to Soft10 under the ASL Software Agreement, nor used Dr. Mo in an unauthorized or unlicensed manner.

76. Findability Sciences is entitled to a declaratory judgment that it has not breached the ASL Software Agreement and owes no fees to Soft10 in connection with same.

77. In addition, absent an order from this Court, Findability Sciences has been and will continue to be irreparably harmed by false statements that Findability Sciences has breached the ASL Software Agreement or made use of or sold Dr. Mo without a license made by Soft10 to SoftBank and customers of Findability Sciences.

78. A declaratory judgment as to breach of contract will clarify and settle legal relations at issue between the parties, and it will afford Findability Sciences relief from the uncertainty, insecurity, and controversy of Soft10's threats to sue Findability Sciences and interfere with Findability Sciences' business.

## COUNT III
### (Breach of Contract)

79. Findability Sciences reavers and incorporates by reference paragraphs 1–78 above.

80. Under the terms of the Prepayment Letter Agreement, Soft10 agreed to pay in full the remaining outstanding prepaid license balance upon seven-days of any demand for such payment.

81. Findability Sciences provided notice of its intention to terminate the ASL Software Agreement and made demand under the Prepayment Letter Agreement on October 20, 2019. Payment was thus due on or before October 27, 2019.

82. Soft10 has refused and failed to make payment of the full outstanding amount of the prepaid license balance to Findability Sciences.

83. Soft10 has also refused and failed to pay the annual fee to the escrow agent under the Escrow Agreement, of which Findability Sciences is a third-party beneficiary.

84. By its above-described actions, Soft10 has breached its obligations under the Prepayment Letter Agreement and Escrow Agreement.

85. Soft10's breaches have caused Findability Sciences substantial damages.

## COUNT IV
### (Breach of the Implied Covenant of Good Faith & Fair Dealing)

86. Findability Sciences reavers and incorporates by reference paragraphs 1–85 above.

87. By its above-described actions, Soft10 has breached the implied covenant of good faith and fair dealing contained within the Prepayment Letter Agreement.

88. Soft10's breaches of the implied covenant of good faith and fair dealing have caused Findability Sciences substantial damages.

## COUNT V
### (Violation of M.G.L. c. 93A)

89. Findability Sciences reavers and incorporates by reference paragraphs 1–88 above.

90. At all relevant times, Soft10 was engaged in trade, business, or commerce in the Commonwealth of Massachusetts.

91. Soft10 engaged in false and deceptive practices in its dealings with Findability Sciences, including by sending correspondence containing false allegations to Findability Sciences' investor and customer; making demands for information that it was contractually not

entitled to; utilizing its agents to attempt to obtain information from Findability Sciences under false pretenses; and threatening to publish knowingly false statements to Findability Sciences' customers in response to Findability Sciences' demand for the refund of the outstanding prepaid license balance and demand for information related to the business operations of Soft10.

92. Moreover, Soft10 failed to pay the annual fee to the escrow agent under the Escrow Agreement knowing that it could jeopardize Findability Sciences rights thereunder.

93. Soft10's acts and practices complained of herein occurred primarily and substantially in Massachusetts or resulted in injury or harm primarily and substantially in Massachusetts.

94. On or about January 29, 2020, Findability Sciences sent a letter describing Soft10's conduct as unfair and deceptive trade practices and resulting in injuries.

95. Soft10 failed to provide any offer of settlement within the thirty-day period set by M.G.L. c. 93A and, as of the filing of this complaint, Soft10 still has provided no offer of settlement.

96. Soft10's actions have been willful and knowing, and Findability Sciences is entitled to recover treble its actual damages plus the costs of maintaining this suit, including costs and attorneys' fees.

WHEREFORE, Findability Sciences requests that this Court:

    A. Enter judgment in favor of Findability Sciences and against Soft10 on Counts I–III in an amount to be determined at trial;

    B. Enter declaratory judgment on Count IV that Findability Sciences did not breach the ASL Software Agreement;

C. Enter an injunction enjoining Soft10 from publishing false statements that Findability Sciences has breached the ASL Software Agreement or made use of or sold Dr. Mo without a license, or that Soft10 is carrying on its business related to Dr. Mo;

D. Treble the damages awarded to Findability Sciences and award Findability Sciences attorneys' fees as to Count III;

E. Award Findability Sciences its attorneys' fees and costs;

F. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Findability Sciences demands a trial by jury on all issues so triable.

FINDABILITY SCIENCES, INC.,

By its attorneys,

/s/ *Gabriel Rossman*
Micah W. Miller (BBO# 676189)
mmiller@nutter.com
Gabriel Rossman (BBO# 699096)
grossman@nutter.com
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

Dated: October 4, 2021

5284255

## **CERTIFICATE OF SERVICE**

I, Gabriel Rossman, certify that, on October 4, 2021 this document was served on all counsel of record via CMECF.

                                                /s/ *Gabriel Rossman*
                                                Gabriel Rossman